[Crim. No. 15820. Second Dist., Div. Five. Aug. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GLENN EUGENE BOURDON, Defendant and Appellant.

## COUNSEL

Howard C. McArdle, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Diana C. Woodward, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—This is an appeal from an order of commitment to the California Rehabilitation Center following a jury determination that appellant was in imminent danger of becoming a narcotics addict.[1]

The initial proceeding which brought appellant before the court was a petition filed by the district attorney seeking involuntary commitment of defendant, in accordance with Welfare and Institutions Code sections 3100 and 3100.6.[2]

---

[1] A motion for new trial was made and denied.

[2] Welfare and Institutions Code, section 3100: "Anyone who believes that a person is addicted to use of narcotics or by reason of the repeated use of narcotics is in imminent danger of becoming addicted to their use or any person who believes him-

Following the court's compliance with sections 3102 and 3104,[3] a hearing was held in compliance with sections 3106 and 3106.5; appellant was determined to be a person who is a narcotic drug addict as defined by section 3100.6; and he was committed to the California Rehabilitation Center. Appellant demanded that a jury trial be accorded him, in compliance with section 3108.[4] In the course of the jury trial, he unsuccessfully sought to raise the issue of probable cause for his arrest, which arrest

self to be addicted or about to become addicted may report such belief to the district attorney, under oath, who may, when there is probable cause, petition the superior court for a commitment of such person to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility."

Welfare and Institutions Code, section 3100.6: "Any peace officer or health officer who has reasonable cause to believe that a person is addicted to the use of narcotics or by reason of the repeated use of narcotics is in imminent danger of becoming addicted to their use may take the person, for his best interest and protection, to the county hospital or other suitable medical institution designated by the board of supervisors of the county."

[3] All section references are to the Welfare and Institutions Code unless otherwise indicated.

Welfare and Institutions Code, section 3102: "Upon the filing of a proper petition pursuant to Section 3100, the court shall order the person sought to be committed to be examined by a physician or physicians, by order similar in form to the order for examination prescribed by Section 5050.1 of this code. Upon the filing of a proper petition pursuant to Section 3100.6, accompanied by the affidavit of the examining physician, the court need not order the person sought to be committed to be examined by any other physician or physicians. The court may also order that the person be confined pending hearing in a county hospital or other suitable institution if the petition is accompanied by the affidavit of a physician alleging that he has examined such person within three days prior to the filing of the petition and has concluded that, unless confined, such person is likely to injure himself or others or become a menace to the public. In any case in which a person is so ordered to be confined, it shall be the duty of the person in charge of the institution to provide the person ordered confined with medical aid as necessary to ease any symptoms of withdrawal from the use of narcotics. Such medical aid shall not be administered by a peace officer who is not licensed as a physician and surgeon."

[4] Welfare and Institutions Code, section 3108: "If the person so committed or any friend in his behalf is dissatisfied with the order of commitment, he may within 30 days after the making of such order, file a written demand that the question of his addiction or imminent danger of addiction be tried by a jury in the superior court of the county in which he was committed. Thereupon, the court shall cause a jury to be summoned and to be in attendance at a date stated, not less than 4 days nor more than 30 days from the date of the demand for a jury trial. The court shall submit to the jury the question: Is the person addicted to the use of narcotics or is he by reason of the repeated use of narcotics in imminent danger of addiction? The order of commitment entered pursuant to Sections 3050, 3051, or 3106.5 shall not be read to the jury, nor alluded to in such trial. The trial shall be had as provided by law for the trial of civil cases and the petition shall be dismissed unless a verdict that the person is addicted or in imminent danger of addiction is found by at least three-fourths of the jury.

"The person committed shall be awarded all his constitutional rights including, but not limited to, his right to counsel, his right to notice of the nature of the proceedings brought against him, his right to the process of the court to compel the attendance of witnesses in his behalf, and his right to be confronted with witnesses."

led to some of the evidence admitted against him. ▉ The propriety of raising the issue of probable cause during the jury-trial phase of the commitment proceedings is the sole contention on appeal.

We agree with appellant's contention. ▉ It is now established that the exclusionary rule does apply to civil narcotic commitment proceedings. (*People* v. *Moore,* 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800].) In *Moore,* the issue of probable cause was tried at the commitment hearing held by the judge. (The same procedure was followed in *People* v. *Benedict,* 2 Cal.App.3d 400 [82 Cal.Rptr. 759].) In *People* v. *Murphy,* 70 Cal.2d 109, 116 [74 Cal.Rptr. 65, 448 P.2d 945], the court reiterated its holding in *Moore*: ". . . We held in *Moore* that a person sought to be committed under this statutory scheme enjoys the freedom from unreasonable search and seizure guaranteed by the Fourth Amendment and implemented by the exclusionary rule. It follows that a claim on appeal from an order of commitment that certain evidence was obtained by an illegal search and seizure cannot be dismissed if that evidence was introduced over timely objection at any stage of the *commitment* proceedings." (Italics added.)

▉ There are two hearings possible within the "commitment proceedings," the first being the judge-hearing and encompassing both the question of *"strict compliance with each of the statutory prerequisites for maintenance of the proceeding . . ."* (*In re Raner,* 59 Cal.2d 635, 639 [30 Cal.Rptr. 814, 381 P.2d 638]) and the evidentiary issue relative to the accusation of addiction. A jury-hearing relates solely to the evidentiary support for the accusation. The Supreme Court has held that the jury-hearing, initiated only upon demand of or for defendant after an affirmative finding at the judge-hearing, is de novo on the addiction issue. (*People* v. *Murphy,* 70 Cal.2d 109 [74 Cal.Rptr. 65, 448 P.2d 945].) Thus we see that the question of sufficiency of evidentiary proof is twice considered. The very concept, *"de novo"* hearing, means that all matters therein in issue are to be considered "anew; afresh; over again,"[5] and it encompasses the admissibility of the evidence sought to be adduced, even though *that* determination is one of law and to be made by the judge and not the jury. The issue of probable cause for arrest and search and seizure under the exclusionary rule is enmeshed with the question of the sufficiency of evidence supportive of addiction.

It might be argued that the ruling of the court on the probable cause issue which was made at the judge-hearing should stand and that that question should not be determined; that the de novo concept applies only to those issues which the jury will determine. However, we do not believe

---

[5] (Webster's 3d New Internat. Dict.)

▉

that the Supreme Court's characterization of the jury-hearing as a trial de novo carried any such limitation.

Furthermore, no principle similar to that set up by Penal Code section 1538.5 for criminal trials, as intimated by the People, is applicable. As stated in *Moore,* after a concession that the proceeding had an identity with the objective of criminal law enforcement (at p. 685): "The absence of any criminal conviction serves to emphasize and not rebut the civil purpose, mechanism, and operation of the program and to further the conclusion that the proceedings are not penal within *Robinson* [v. *California,* 370 U.S. 660 (8 L.Ed.2d 758, 82 S.Ct. 1417)]."

Thus we see that, though closely identified with certain aspects of criminal law (protecting the person accused), the purpose and procedure are civil in nature.[6] The motion to suppress under Penal Code section 1538.5 is applicable only in criminal cases. The issue of admissibility (suppression) of the evidence must be raised at every "trial" in the civil action, and there is no "continuing ruling" on admissibility as in the criminal trial.[7] The judge was obligated to hear and determine the issue of probable cause when that issue was raised at the jury-hearing. He could not rely upon his determination of that issue which he had made in the judge-hearing.[8] As we have stated, in the *Moore* case, *supra,* the probable cause issue was tried at the judge-hearing. Since the ruling resulted in an invalid *commitment* because the ruling was erroneous on the probable cause issue, the whole proceedings were reversed. Even though no objection was raised at the jury hearing, the commitment being erroneous, the jury determination of *status* could not breathe life into the already dead commitment order. In *Benedict, supra,* there was presented the problem of a *valid commitment hearing* preceding the admission of evidence at the jury-hearing. No probable cause issue was raised at the jury hearing in *Benedict,* and the contention on appeal there attacked only the validity of the commitment hearing (judge-hearing). The case of *People* v. *Clark,* 272 Cal.App.2d 294 [77 Cal.Rptr. 50], considers the issue of probable cause founded upon a ruling on that issue tried at the jury hearing. Probable cause was there found to have existed, and no issue was raised on appeal as to the propriety of determining that issue at the jury-hearing. We therefore do not rely upon *Clark* as authority in support of appellant's conten-

---

[6]We note the circumspect reference to "the person addicted," and never to "the defendant."

[7]The appellant urges that the issue of probable cause should have been *submitted* to the jury. We consider his position rather to be that the issue must be determined by the judge at the jury-hearing.

[8]At the judge-hearing, the appellant offered no evidence; there was, however, an objection made, raising the issue; it was overruled.

tion in the instant case, though it *assumes* the jury-hearing a proper proceeding in which to raise the probable cause issue.[9]

We, of course, are not confronted with the need to examine into the merits of the contention relating to probable cause. The facts were not permitted to be adduced. The person accused of being a narcotic addict has the right to raise the issue by presenting evidence bearing thereon. Appellant here was prevented from exercising that right.

The order of commitment is reversed, and the cause is remanded with directions to proceed with a jury-hearing in compliance with Welfare and Institutions Code section 3108, in accordance with this opinion.

Aiso, J., and Reppy, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 22, 1970. McComb, J., was of the opinion that the petition should be granted.

---

[9]This is not to say it *assumes* the judge-hearing would *not* also have been an appropriate proceeding to raise the issue, for obviously *Moore* settled that problem.